# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Charles H. Camp, )
)
        Plaintiff, )
)
        v. )    Civil Case No. 06cv692 (RJL)
)
Tomas O. Kollen, )
)
        Defendant. )
)

## CHARLES H. CAMP'S OPPOSITION TO MOTION TO DISMISS VERIFIED COMPLAINT AND FOR SANCTIONS

Plaintiff Charles H. Camp ("Camp"), *pro se*, hereby opposes the Motion to Dismiss Verified Complaint and for Sanctions (the "Motion") filed by Defendant Tomas O. Kollen ("Kollen") "through counsel, appearing specially" as follows:

## I.

## INTRODUCTION

Contrary to assertions contained in Kollen's Motion, this action does not duplicate anything occurring or to occur in either the "stayed in its entirety" D.C. Superior Court action[1]—Kollen's *sole* basis for his Motion to Dismiss and for Sanctions—or in any arbitration Kollen eventually may determine to commence against Camp.[2]

This District Court action—solely pertaining to a December 20, 2005, Confession of Judgment Promissory Note for $100,000.00 (the "Note," Exhibit 1 hereto) signed by Kollen—

---

[1] *See* Exhibit D (at 3) to Kollen's Motion. Contrary to the suggestion in Kollen's Motion (at 2), no oral or documentary discovery was obtained by Kollen or Camp in the Superior Court action prior to the stay of the action "in its entirety."

[2] Despite a March 28, 2006, Order of the Superior Court (Exhibit C to Kollen's Motion), compelling Kollen to arbitrate certain (erroneous and premature) counterclaims against Camp, and despite multiple requests by Camp, Kollen has not yet pursued, or even proposed any definite arbitration terms for any arbitration against Camp.

should be allowed to proceed separate and apart from any potential arbitration by Kollen against

Camp. Importantly, Camp has no intention of pursuing an arbitration against Kollen on the Note,

given the pendancy of this District Court action.

With regard to Kollen's outrageous claim for sanctions against Camp under 28 U.S.C.

Section 1927, last Friday, May 12, 2006, Camp wrote to Kollen's counsel (*see* Exhibit 2 hereto)

stating that Section 1927 had no application to this District Court case as Camp has not done

anything to multiply any proceedings before this District Court:

> Following up on your recent letter and our conversation yesterday in
> which you threatened to seek sanctions against me under 28 U.S.C.
> Section 1927, please be aware that Section 1927 is inapplicable to our
> situation. *See, e.g., Grid Systems Corp. v. John Fluke Manufacturing
> Company, Inc.*, 41 F.3d 1318 (9th Cir. 1994) (citing *Matter of Case*,
> 937 F.2d 1014 (5th Cir. 1991)) ("They did not multiply the
> proceedings in the case before the district court. __The suit filed in the
> state court is an entirely separate action, not subject to the
> sanctioning power of the district court. Section 1927 cannot reach
> conduct of a party who is not involved in an action before the
> sanctioning court at the time of the conduct__.").

> Thus, your belief that it was sanctionable for me to commence the
> federal action (prior to any decision by Judge Kravitz) is erroneous.
> "__Identical cases between the same parties can be pending in a
> federal district court and a state court at the same time. . . . In
> such instances, the first forum to dispose of the case enters a final
> judgment binding on the parties.__" *Mountain Pure, LLC v. Turner
> Holdings, LLC*, 439 F.3d 920 (8th Cir. 2006) (emphasis added).

> Judge Kravitz's decision compelling arbitration is not a final
> judgment and, thus, may not serve as a basis for asserting *res judicata*
> in the federal action. *John Umana v. Swidler & Berlin, Chartered*,
> 669 A.2d 717 (D.C. 1995) ("The order compelling Umana to
> arbitrate his claims against the individual firm members is not a final
> order. It is also not an appealable interlocutory order. . . . Therefore,
> Umana's attempt to appeal the order compelling arbitration with the
> firm members must fail.").

> Thus, I ask that you *carefully* reconsider your intention of seeking
> sanctions against me for doing what I am legally entitled to do under
> well-established law. If you seek sanctions against me, given the

clear state of the law as set forth for you in this letter, I will be compelled to respond in kind.

(Emphasis added.)

## II.

### BACKGROUND

On July 12, 2004, Camp entered into a Retainer Agreement with Mr. Breck A. Craig and his company, West Indies Network-I, LLC ("WIN-I"), and Kollen as financier, for the purpose of prosecuting a lawsuit against Nortel Networks (CALA) Inc. and two of its executives, Richard Nixon and Raymond Bulengo (the "WIN-I litigation") in the United States District Court for the Southern District of Florida.

On October 12, 2004, Camp, through local counsel (now WIN-I's lead counsel in the WIN-I litigation), filed a Complaint on behalf of WIN-I alleging $500 million in damages.[3] At no time did either Mr. Craig or Mr. Kollen ever personally have any claims against Nortel or any of its executives—and no such personal claims were ever asserted by Messrs. Craig or Kollen in the WIN-I litigation or elsewhere. Importantly, the WIN-I litigation is still being prosecuted, with a trial date set for October 16, 2006, making any claims Kollen believes he may have against Camp entirely premature.

On December 20, 2005—over seventeen (17) months after signing the Retainer Agreement—Kollen signed the Confession of Judgment Promissory Note that is the subject of this lawsuit. *See* Exhibit 1 hereto. The Note created an entirely separate and additional obligation to pay Camp. Importantly, the Note is devoid of any requirement that Camp enforce the Note through

---

[3] *West Indies Network-I, LLC v. Nortel Networks (CALA) Inc., Richard A. Nixon and Raymond C. Bulengo*, Case No. 04-61320. (S.D. Fla.)

arbitration.    Indeed, if Camp released Kollen from any further obligations under the Retainer Agreement, Kollen would still be liable to Camp under the Note.

Because of repeated failures by Kollen to "get current" on his financial obligations to Camp,[4] and with the express permission of WIN-I, its sole owner, Mr. Breck Craig, and the District Court in Miami, Camp was allowed to withdraw as counsel to WIN-I in the WIN-I litigation.

The Note (Exhibit 1 at 3) signed by Kollen contains the following confession of judgment clause:

> **CONFESSION OF JUDGMENT.** Maker hereby constitutes and appoints Holder or any attorney designated by Holder (any of the foregoing may act), as the true and lawful attorneys-in-fact for him, in his name, place and stead, and upon the occurrence of a Default in the payment of the Obligations due under this Note, at maturity, or upon acceleration, to confess judgment against Maker, in favor of Holder, **BEFORE ANY COURT** as Holder may determine in his sole and absolute discretion, for all amounts owed with respect to the Obligations under and pursuant to this Note including, without limitation, all costs of collection and attorneys' fees, and **COURT COSTS**, hereby ratifying and confirming the acts of said attorney-in-fact as if done by Maker himself.

(EMPHASIS added.)

Likewise, the Note (Exhibit 1 at 3-4) states,

> **MISCELLANEOUS PROVISIONS. . . .    Applicable Law; Conflict Between Documents.** This Note shall be governed by and construed under the laws of the laws of the District of Columbia without regard to that state's conflict of laws principles. **Jurisdiction. Maker irrevocably agrees to non-exclusive personal jurisdiction in the District of Columbia and Virginia for all purposes,**

---

[4] Because of Kollen's repeated failures to satisfy his financial obligations to Camp, WIN-I's owner, Mr. Craig, terminated Kollen as the financier of the WIN-I litigation on December 1, 2005. In a December 1, 2005, email from Mr. Craig to Kollen (Exhibit 3 hereto), Mr. Craig wrote to Kollen, "You are out due to defaulting on the retainer agreement with Charles [Camp] and defaulting on our agreement to fund so many times I have lost count. . . . You no longer have any financial interest, or any other interest, in the outcome of this case. Tomas, you have also exposed me to a potentially large financial liability due to your non-performance and I fully expect you to pay Mr. Camp what you have agreed to pay him in full. I hold [you] . . . totally responsible for payment to Mr. Camp." Because of Kollen's numerous false and misleading promises to get current on his financial obligations, two weeks later, on December 15, 2005, Camp sent Kollen an email, Exhibit 4 hereto, and asked him to sign a Confession of Judgment Promissory Note.

**including discovery in aid of enforcement of this Note and the Judgment.** . . .

(Emphasis added.)

Under the Note, on December 31, 2005, Kollen was required to pay Camp $35,000.00. Exhibit 1 at 2. Failing to make the $35,000.00 payment required on December 31, 2005, on January 2, 2006, Kollen acknowledged and agreed he had defaulted on the Note. *See* Exhibit 5 hereto ("You acknowledged you have defaulted on the note and are required to pay the penalties provided for in the note because of your default.").

On January 3, 2006, Kollen paid Camp $12,000 on the Note, *see* Exhibit 6, and promised to pay the remaining $23,000 of the $35,000 payment by Monday, January 9, 2006. *See* Exhibit 7 hereto. Kollen failed to make the promised $23,000 payment and since January 3, 2006, has not made any additional payments on the Note.

On January 9, 2005, Camp accelerated the Note, making all amounts to have been paid under the Note immediately due and payable. *See* Exhibit 7 hereto.

Under the Note, in the event of a default, all outstanding amounts owed under the Note "shall bear interest at the rate of twenty-four percent (24%) or the maximum rate allowable by District of Columbia law, which ever is higher ('Default Rate'). In the event the Default Rate is instituted pursuant to the terms of this Note, such rate shall be retroactively effective as of October 1, 2005, and shall be applied to the then outstanding balance. The Default Rate shall also apply from demand until all amounts owed under this Note are paid in full." Exhibit 1 ("DEFAULT RATE").

## III.

## DISCUSSION

**A.    "Special Appearances" No Longer Exist.**

So-called "special appearances" no longer exist. *See, e.g., Whittier v. Emmet*, 1960 U.S.

App. Lexis 4186 (D.C. 1960) ("Rule 12(b) of the Federal Rules of Civil Procedure abolished the

special appearance"); and *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 786 (5th Cir. 1990)

("the distinction between general and special appearances no longer exists in federal courts"). For

this reason, Kollen's motion for leave to appear "specially" in this lawsuit (*see* Kollen's

Memorandum of Points and Authorities in Support of Motion to Dismiss, at 1) should be denied.

Kollen's appearance in this action via the filing of his Motion to Dismiss and for Sanctions

in which Kollen asserted none of the objections or defenses Federal Rule 12 requires be asserted in

the first motion or responsive pleading, constituted a waiver *inter alia* by Kollen of the "defense of

lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of

service of process." F.R.C.P. 12(h)(1).

More importantly, however, in *Sullivan v. Malarkey*, 392 A.2d 1057, 1060 (D.C. 1978), the

District of Columbia Court of Appeals stated,

> We also are not persuaded by the Sullivans' assertion that the entry of
> judgment was inappropriate because the Malarkeys had not filed an
> answer to the complaint. . . . '[since] **by its nature an agreement to
> confess judgment obviates the necessity for a formal
> commencement of action, and *dispenses with the necessity of
> service and a result trial of issues*,**' 6A MOORE'S FEDERAL
> PRACTICE Section 58.09, at 354 (2d ed. 1974) (footnote omitted),
> the filing of a formal answer is not a prerequisite to the entry of such a
> judgment. *Cf. In re Estate of Himmelfarb*, D.C. App. 345 A.2d 477,
> 482 (1975) ('In appropriate circumstances, a judgment entered by
> consent can have the same res judicata effect as a judgment entered
> after answer and trial.') '***An authorization to confess judgment is in
> fact a waiver of the provisions of the Rules governing***

*commencement, service of process and trial*.' 6A MOORE'S, supra, at 356-57 (footnotes omitted).

(Emphasis added.)

**B.      None Of The Authorities Cited In Kollen's Motion Support Dismissal Of The Complaint Or Imposition Of Sanctions Against Camp.**

In seeking to have this Court dismiss Camp's Complaint solely because of the stayed Superior Court action—and not for any substantive reason—Kollen's Motion (at 3) cites *Curtis v. Citibank, N.A.*, 226 F.3d 133, 136 (2nd Cir. 2000) and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). Neither of those cases supports Kollen's position. Indeed, *Colorado River supports* allowing this District Court action to proceed.

First, *Curtis v. Citibank* involved two federal actions—not concurrent state and federal actions and, thus, has no application to the current situation. *Curtis v. Citibank* at 4 ("As part of its general power to administer its docket, a **district court** may stay or dismiss a suit that is duplicative of another **federal** court suit."). (Emphasis added.)

Likewise, in *Colorado River*—a case involving national water rights and a statute passed by Congress expressly for the purpose of allowing the United States to participate in a state action—the Supreme Court made clear that "Generally, as between state and federal courts, the rule is that '**the pendancy of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction**.'" 424 U.S. at 818 (citing *McClelland v. Carland*, 217 U.S. 268, 282 (1910) and *Donovan v. City of Dallas*, 377 U.S. 408 (1964)) (emphasis added).

Distinguishing concurrent state and federal actions from concurrent federal actions, the Supreme Court in *Colorado River* at 817, also noted, "As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. . . . **The difference in general approach between state-federal concurrent jurisdiction and wholly**

**federal concurrent jurisdiction stems from** *the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them*." (Emphasis added.)

In an effort to dissuade Kollen from filing his erroneous sanctions claim against Camp, Camp expressly pointed out to Kollen's counsel in his May 12, 2006, letter (Exhibit 2 hereto) the fact that this federal action is entirely appropriate, "Thus, your belief that it was sanctionable for me to commence the federal action (prior to any [final judgment] decision by Judge Kravitz) is erroneous. **"Identical cases between the same parties can be pending in a federal district court and a state court at the same time. . . . In such instances, the first forum to dispose of the case enters a final judgment binding on the parties."** *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920 (8th Cir. 2006) (emphasis added).

And since there has been no "final judgment" in the now-stayed Superior Court action, it is entirely appropriate for Camp to seek redress against Kollen under the Confession of Judgment Promissory Note in this Court. This fact, too, was pointed out to Kollen's counsel in Camp's May 12 letter (Exhibit 2 hereto), "Judge Kravitz's decision compelling arbitration is not a final judgment and, thus, may not serve as a basis for asserting *res judicata* in the federal action. *John Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717 (D.C. 1995) ('The order compelling Umana to arbitrate his claims against the individual firm members is not a final order. It is also not an appealable interlocutory order. . . . Therefore, Umana's attempt to appeal the order compelling arbitration with the firm members must fail.')."

Given the fact that the Superior Court has stayed the action between Kollen and Camp, that Camp has no intention of pursuing any arbitration against Kollen on the Confession of Judgment Promissory Note, and that this action will not duplicate anything occurring (or to occur) in either the Superior Court or in any potential arbitration, sanctions against Camp would be entirely

inappropriate—especially given Camp's clear right to maintain a concurrent action in this District Court (even if the Superior Court were not stayed). And this fact, too, was highlighted for Kollen's counsel in Camp's May 12, 2006, letter (Exhibit 2 hereto),

> Following up on your recent letter and our conversation yesterday in which you threatened to seek sanctions against me under 28 U.S.C. Section 1927, please be aware that Section 1927 is inapplicable to our situation. *See, e.g., Grid Systems Corp. v. John Fluke Manufacturing Company, Inc.,* 41 F.3d 1318 (9th Cir. 1994) (citing *Matter of Case,* 937 F.2d 1014 (5th Cir. 1991)) ("**They did not multiply the proceedings in the case before the district court. The suit filed in the state court is an entirely separate action, not subject to the sanctioning power of the district court.** Section 1927 cannot reach conduct of a party who is not involved in an action before the sanctioning court at the time of the conduct.").

(Emphasis added.)

Ironically, Kollen's Motion (at 4) cites, but misconstrues, the holding in *Grid Systems Corp., v. John Fluke Manufacturing Company, Inc.,* 41 F.3d 1318 (9th Cir. 1994) (citing *Matter of Case,* 937 F.2d 1014 (5th Cir. 1991)). Likewise, *Healey v. Labgold,* 231 F.Supp.2d 64, 68 (D.D.C. 2002) cited in Kollen's Motion (at 4) has no application to this case, as *Healey* involved a plaintiff who asserted claims in this Court that another Federal District Court and a Bankruptcy Court had held in final decisions were not owned by the plaintiff.

Next, nothing in Camp's filings in this District Court are intended to be "mean spirited," as Kollen's Motion (at 4) contends. In Camp's May 1, 2006, Memorandum supporting his Motion for Judgment, Camp described Kollen's financial sophistication and background with perfect accuracy. The fact that Kollen has been convicted of a financial (*i.e.,* tax evasion) felony is not a fact created by Camp for the purpose of blackening Kollen's name. That is something Kollen did to himself.

In contrast, Kollen's Motion (at 2-3) is incredibly mean-spirited when it seeks to impugn Camp's honesty, integrity and ethics through bald allegations not supported (and unsupportable) by

*any* factual basis or evidence of any wrongdoing whatsoever. Indeed, in the Superior Court, Kollen made the same sort of defamatory claims with respect to the Retainer Agreement signed by Kollen and others, and those claims were flatly rejected by the Superior Court: "[T]here is no evidence in the record that the defendant was coerced or pressured into signing the retainer agreement or that the agreement is unconscionable or otherwise subject to attack." *See* Exhibit C (at 3) to Kollen's Motion.

**C.    No Defenses To the Confession of Judgment Promissory Note Are Available To Kollen.**

As indicated in Camp's May 1, 2006, Motion for Judgment—to which Kollen has filed no separate or substantive opposition—the "very purpose" of the Note is to allow Camp to obtain a judgment against Kollen "without a trial of possible defenses which the signer [Kollen] might assert." *Hadden v. Rumsey Products, Inc.*, 196 F.2d 92, 96 (2nd Cir. 1952) ("The very purpose of cognovit notes is to permit the note holder to obtain ***judgment*** without a trial of possible defenses which the signers of the notes might assert.").[5] *See also Sullivan v. Malarkey, supra,* at 6.

In this case, Camp, as Holder of the Note, was specifically authorized "to confess judgment against Maker [Kollen], in favor of Holder [Camp], before any court as Holder [Camp] may determine in his sole and absolute discretion" for all amounts owed by Kollen to Camp under the Note. (Exhibit 1 at 3.) Thus, the Note provides this Court with the power to immediately enter the Confessed Judgment against him—and waived any right Kollen had to notice or service of process, or to answer or otherwise assert any defenses (or have a trial) in response to Camp's Verified Complaint.

---

[5] The Supreme Court has upheld the constitutionality of entering judgments by confession. *Overmyer Co. v. Frick Co.*, 92 S.Ct. 775 (1972), cited in *Stambler v. Holt*, 1992 U.S. Dist. LEXIS 9639 (D.C. 1992).

## IV.

## <u>CONCLUSION</u>

For all of these reasons, Kollen's Motion to Dismiss Verified Complaint and for Sanctions

should be denied, and Camp's Motion for Judgment should be granted.  Camp further prays that the

Court enter such other and further relief as the Court may determine is just.

Respectfully submitted,

Charles H. Camp (DC Bar No. 416575)
Law Offices of Charles H. Camp
1725 Eye Street, N.W., Suite 300
Washington, D.C.  20006
Tele. (202) 349-3905
Fax   (202) 349-3906

Date:  May 17, 2006

**<u>EXHIBIT 1</u>**

## Charles Camp

| | |
|---|---|
| **From:** | Tomas O. Kollen [tkollen@spintcorp.com] |
| **Sent:** | Tuesday, December 20, 2005 12:00 PM |
| **To:** | ccamp@charlescamplaw.com |
| **Subject:** | Promissory Note |
| **Attachments:** | CharlesCampPromissoryNote20051220.pdf |

Charles,

Pls. see attached signed note.

Good Luck tomorrow and please call me afterwards,

Best Regards,

Tomas

## CONFESSION OF JUDGMENT PROMISSORY NOTE

$100,000.00                                         Effective as of October 1, 2005

Tomas O. Kollen
1900 L Street, N.W., Suite 725
Washington, D.C. 20036

("Maker"),

      AND

Charles H. Camp
Law Offices of Charles H. Camp
1725 Eye Street, N.W., Suite 300
Washington, D.C. 20006

("Holder").

### IMPORTANT NOTICE

**THIS NOTE CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS MAKER AND ALLOWS HOLDER TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE.**

Tomas O. Kollen (hereinafter "Maker") promises to pay to the order of Holder, in lawful money of the United States of America, at Holder's address indicated above or wherever else Holder may specify, the principal sum of ONE HUNDRED THOUSAND and No/100 Dollars ($100,000.00) plus interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**PURPOSE AND CONSIDERATION.** This Note is being signed by Maker as an inducement to Holder to not withdraw from representing West Indies Network I, LLC in its currently pending litigation in the United States District Court for the Southern District of Florida, despite Maker's prior breaches of its retainer agreement with Holder, including the Maker's agreement to pay Holder $90,000.00 "upon completion of mediation to cover fees and expenses through trial."

**DISCOUNT SATISFACTION OF THIS NOTE.** Maker may satisfy his obligations under this Note by paying Holder a total of $79,700.00[1] by not later than December 31, 2005.

---

[1] Calculated as follows: $90,000.00 that had been due and payable on October 1, 2005, less $2,500.00 paid September 30, 2005, $6,000.00 paid October 7, 2005, and $1,800.00 paid December 9, 2005.

**REPAYMENT TERMS.** The first payment due under this Note shall be due and payable **on or before** December 31, 2005, in the amount of $35,000.00. Thereafter, this Note shall be payable in monthly installments of $10,000.00 per month, due **on or before** the first (1st) day of each month commencing February 1, 2006, until all amounts due hereunder are paid in full.

**TIME IS OF THE ESSENCE WITH REGARD TO ALL PAYMENTS DUE UNDER THIS NOTE.**

**INTEREST RATE.** Interest on this Note shall accrue on the unpaid principal balance of this Note from the date hereof at the rate of TWELVE PERCENT (12.00%) ("Interest Rate").

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs, all outstanding amounts owed under this Note shall bear interest at the rate of twenty-four percent (24%) or the maximum rate allowable by District of Columbia law, which ever is higher ("Default Rate"). In the event the Default Rate is instituted pursuant to the terms of this Note, such rate shall be retroactively effective as of October 1, 2005, and shall be applied to the then outstanding balance. The Default Rate shall also apply from demand until all amounts owed under this Note are paid in full.

**PREPAYMENT ALLOWED.** This Note may be prepaid in whole or in part at any time. Any prepayment shall include accrued interest and all other sums then due under this Note. No partial prepayment shall affect the obligation of Maker to make any payment of principal or interest due under this Note on the date specified below in the Repayment Terms paragraph of this Note until this Note has been paid in full.

**APPLICATION OF PAYMENTS.** Monies received by Holder on this Note shall be applied to accrued interest and penalties, and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order desired by Holder, in Holder's sole and absolute discretion.

**DEFINITIONS. Obligations.** The term "Obligations" used in this Note refers to any and all indebtedness and other obligations under this Note. **Certain Other Terms.** All terms that are used but not otherwise defined shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made (there being no grace period under this Note), Maker shall also pay to Holder a late charge equal to 5% of each payment past due.

Acceptance by Holder of any late payment without an accompanying late charge shall not be deemed a waiver of Holder's right to collect such late charge or to collect a late charge for any subsequent late payment received.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Maker shall pay all of Holder's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses,

whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or Bankruptcy proceeding.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note. **Cessation; Bankruptcy.** The death of, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any Bankruptcy or insolvency proceeding by or against Maker, or any party to this Note.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note, Holder may at any time thereafter, take the following actions: **Holder Lien.** Foreclose its security interest or lien on Maker's property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Holder's option, any or all other Obligations, whereupon this Note and the accelerated Obligations shall be immediately due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note, or as provided by law or equity.

**CONFESSION OF JUDGMENT.** Maker hereby constitutes and appoints Holder or any attorney designated by Holder (any of the foregoing may act), as the true and lawful attorneys-in-fact for him, in his name, place and stead, and upon the occurrence of a Default in the payment of the Obligations due under this Note, at maturity, or upon acceleration, to confess judgment against Maker, in favor of Holder, before any court as Holder may determine in his sole and absolute discretion, for all amounts owed with respect to the Obligations under and pursuant to this Note including, without limitation, all costs of collection and attorneys' fees, and court costs, hereby ratifying and confirming the acts of said attorney-in-fact as if done by Maker himself.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note shall be valid unless in writing and signed by Holder. No waiver by Holder of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Holder in exercising any right, power, or remedy under this Note shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Maker hereby waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, Maker agrees that Holder may extend, modify or renew this Note or make a novation of the loan evidenced by this Note for any period, and grant any releases, compromises or indulgences with respect to any collateral securing this Note, all without notice to or consent of Maker without affecting the liability of Maker under this Note.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Holder's interests in and rights under this Note are freely assignable, in whole or in part, by Holder. Maker may not assign his rights and interest hereunder without the prior written consent of Holder. Any attempt by Maker to assign without Holder's prior written consent is null and void. Any assignment shall not release any Maker from the Obligations. **Applicable Law; Conflict Between Documents.** This Note shall be governed by and construed under the laws of

.the laws of the District of Columbia without regard to that state's conflict of laws principles. **Jurisdiction.** Maker irrevocably agrees to non-exclusive personal jurisdiction in the District of Columbia and Virginia for all purposes, including discovery in aid of enforcement of this Note and the Judgment. **Severability.** If any provision of this Note shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Maker shall be sufficiently given, if in writing and mailed or delivered to the Maker's address shown above or such other address as provided hereunder, and to Holder, if in writing and mailed or delivered to Holder's office address shown above or such other address as Holder may specify in writing from time to time. In the event that Maker changes his address at any time prior to the date the Obligations are paid in full, Maker agrees to promptly give written notice of said change of address by pre-paid courier or delivery service (*e.g.*, Federal Express or DHL).

**SECURITY.** Maker hereby grants Holder a lien on all property of whatever type and wherever located owned that is directly or indirectly by Maker, in order to secure Maker's obligations to Holder. Maker hereby authorizes Holder to take all necessary actions to record, perfect and enforce the lien granted hereunder by Maker to Holder.

**BANKRUPTCY.** Maker agrees that his obligations under this Note shall not be dischargeable in bankruptcy, and hereby waives any and all rights to claim that the Obligations under this Note are dischargeable in bankruptcy.

**PLACE OF DELIVERY.** Maker hereby certifies that this Note was delivered to Holder in the District of Columbia. Delivery to Maker by facsimile or email shall constitute delivery of this Note.

**MAKER:**

Tomas O. Kollen

**HOLDER:**

Charles H. Camp

**EXHIBIT 2**

LAW OFFICES OF

# CHARLES H. CAMP

May 12, 2006

**<u>VIA FACSIMILE</u>**

John M. Clifford, Esquire
Clifford & Garde
1707 L Street, N.W.
Suite 500
Washington, D.C. 20036

Re: **<u>Your Erroneous Sanctions Threat Under 28 U.S.C. Section 1927</u>**

Dear Mr. Clifford:

Following up on your recent letter and our conversation yesterday in which you threatened to seek sanctions against me under 28 U.S.C. Section 1927, please be aware that Section 1927 is inapplicable to our situation. *See, e.g., Grid Systems Corp. v. John Fluke Manufacturing Company, Inc.*, 41 F.3d 1318 (9th Cir. 1994) (citing *Matter of Case*, 937 F.2d 1014 (5th Cir. 1991)) ("They did not multiply the proceedings in the case before the district court. The suit filed in the state court is an entirely separate action, not subject to the sanctioning power of the district court. Section 1927 cannot reach conduct of a party who is not involved in an action before the sanctioning court at the time of the conduct.").

Thus, your belief that it was sanctionable for me to commence the federal action (prior to any decision by Judge Kravitz) is erroneous. "Identical cases between the same parties can be pending in a federal district court and a state court at the same time. . . . In such instances, the first forum to dispose of the case enters a <u>final judgment</u> binding on the parties." *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920 (8th Cir. 2006) (emphasis added).

Judge Kravitz's decision compelling arbitration is not a final judgment and, thus, may not serve as a basis for asserting *res judicata* in the federal action. *John Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717 (D.C. 1995) ("The order compelling Umana to arbitrate his claims against the individual firm members is not a final order. It is also not an appealable interlocutory order. . . . Therefore, Umana's attempt to appeal the order compelling arbitration with the firm members must fail.").

Thus, I ask that you *carefully* reconsider your intention of seeking sanctions against me for doing what I am legally entitled to do under well-established law. If you seek sanctions against me, given the clear state of the law as set forth for you in this letter, I will be compelled to respond in kind.

LAW OFFICES OF

# CHARLES H. CAMP

John M. Clifford, Esquire
May 12, 2006
Page 2

Thank you for your consideration.

Sincerely,

Charles H. Camp

**EXHIBIT 3**

**Charles Camp**

| | |
|---|---|
| **From:** | B CRAIG [bc09@usa.net] |
| **Sent:** | Thursday, December 01, 2005 11:18 PM |
| **To:** | ccamp@charlescamplaw.com; 'B CRAIG'; tkollen@spintcorp.com |
| **Subject:** | Re: December Fee Now Due |

Tomas,

You are out due to defaulting on the retainer agreement with Charles and defaulting on our agreement to fund so many times I have lost count. Nor have you terminated our agreement.

You no longer have any financial interest, or any other interest, in the out come of this case.

Tomas, you have also exposed me to a potentially large financial liability due to your non-performance and I fully expect you to pay Mr. Camp what you have agreed to pay him **in full**. I hold to totally responsible for payment to Mr. Camp.

Charles, I am doing everything I can to find funding for you so we can make a good showing at the Summary Judgment hearing. Please do not give up.

Regards,

Breck Craig

**EXHIBIT 4**

## Charles Camp

| | |
|---|---|
| **From:** | Charles Camp [ccamp@charlescamplaw.com] |
| **Sent:** | Thursday, December 15, 2005 3:15 PM |
| **To:** | 'Tomas O. Kollen'; 'Tomas O. Kollen'; 'Tomas O. Kollen' |
| **Cc:** | 'B CRAIG' |
| **Subject:** | Tomas Kollen Promissory Note |
| **Importance:** | High |
| **Attachments:** | Tomas Kollen Promissory Note.pdf |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | 'Tomas O. Kollen' | Read: 12/19/2005 9:20 AM |
| | 'Tomas O. Kollen' | Read: 12/19/2005 7:42 AM |
| | 'Tomas O. Kollen' | |
| | 'B CRAIG' | |

Dear Tomas:

I hope that you are having an enjoyable trip to Europe.

While I have *complete faith* that you intend to get current with me by the end of this year, because I have been disappointed by your assurances (and been put in *very* difficult financial positions because of *your* failures to pay me on time), I must ask you to sign the attached promissory note and return it to me by fax or email before I go to Florida next Tuesday for the summary judgment hearing. (Upon your return from Europe, we can exchange original signatures for our respective records.)

As you will note from the enclosed, the discounted lump sum payment I was to have received by October 1 is *still* available *if* the remaining amount due under the proposal ($79,700.00) is received by me by the end of this year.

If you do *not* sign the attached note and return it to me prior to next Tuesday, immediately following my return from Miami next week, I *will* take all appropriate actions to protect my interests *vis-à-vis* you—something I very much hope I do not have to do. Needless to add, if you truly do intend to "get current" with me by the end of this year, you will have no hesitancy in signing the attached note.

If you *do* sign the attached note giving me written assurances of your previously conveyed good intentions, you can rest assured that the very cordial relationship we previously had will continue as before.

If you have any questions, please let me know.

Thank you very much for your consideration.

Sincerely,

Charles Camp

Charles H. Camp, Esquire
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, NW, Suite 300
Washington, DC 20006
Tel 202.349.3905

Fax  202.349.3906
Cell  301.461.0283
www.charlescamplaw.com

## CONFESSION OF JUDGMENT PROMISSORY NOTE

$100,000.00                                    Effective as of October 1, 2005

Tomas O. Kollen
1900 L Street, N.W., Suite 725
Washington, D.C. 20036

("Maker"),

     AND

Charles H. Camp
Law Offices of Charles H. Camp
1725 Eye Street, N.W., Suite 300
Washington, D.C. 20006

("Holder").

### IMPORTANT NOTICE

**THIS NOTE CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS MAKER AND ALLOWS HOLDER TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE.**

Tomas O. Kollen (hereinafter "Maker") promises to pay to the order of Holder, in lawful money of the United States of America, at Holder's address indicated above or wherever else Holder may specify, the principal sum of ONE HUNDRED THOUSAND and No/100 Dollars ($100,000.00) plus interest on the unpaid principal balance at the rate and on the terms provided in this Promissory Note (including all renewals, extensions or modifications hereof, this "Note").

**PURPOSE AND CONSIDERATION.** This Note is being signed by Maker as an inducement to Holder to not withdraw from representing West Indies Network I, LLC in its currently pending litigation in the United States District Court for the Southern District of Florida, despite Maker's prior breaches of its retainer agreement with Holder, including the Maker's agreement to pay Holder $90,000.00 "upon completion of mediation to cover fees and expenses through trial."

**DISCOUNT SATISFACTION OF THIS NOTE.** Maker may satisfy his obligations under this Note by paying Holder a total of $79,700.00[1] by not later than December 31, 2005.

---

[1] Calculated as follows: $90,000.00 that had been due and payable on October 1, 2005, less $2,500.00 paid September 30, 2005, $6,000.00 paid October 7, 2005, and $1,800.00 paid December 9, 2005.

**REPAYMENT TERMS.** The first payment due under this Note shall be due and payable **on or before** December 31, 2005, in the amount of $35,000.00. Thereafter, this Note shall be payable in monthly installments of $10,000.00 per month, due **on or before** the first (1st) day of each month commencing February 1, 2006, until all amounts due hereunder are paid in full.

**TIME IS OF THE ESSENCE WITH REGARD TO ALL PAYMENTS DUE UNDER THIS NOTE.**

**INTEREST RATE.** Interest on this Note shall accrue on the unpaid principal balance of this Note from the date hereof at the rate of TWELVE PERCENT (12.00%) ("Interest Rate").

**DEFAULT RATE.** In addition to all other rights contained in this Note, if a Default (as defined herein) occurs, all outstanding amounts owed under this Note shall bear interest at the rate of twenty-four percent (24%) or the maximum rate allowable by District of Columbia law, which ever is higher ("Default Rate"). In the event the Default Rate is instituted pursuant to the terms of this Note, such rate shall be retroactively effective as of October 1, 2005, and shall be applied to the then outstanding balance. The Default Rate shall also apply from demand until all amounts owed under this Note are paid in full.

**PREPAYMENT ALLOWED.** This Note may be prepaid in whole or in part at any time. Any prepayment shall include accrued interest and all other sums then due under this Note. No partial prepayment shall affect the obligation of Maker to make any payment of principal or interest due under this Note on the date specified below in the Repayment Terms paragraph of this Note until this Note has been paid in full.

**APPLICATION OF PAYMENTS.** Monies received by Holder on this Note shall be applied to accrued interest and penalties, and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order desired by Holder, in Holder's sole and absolute discretion.

**DEFINITIONS. Obligations.** The term "Obligations" used in this Note refers to any and all indebtedness and other obligations under this Note. **Certain Other Terms.** All terms that are used but not otherwise defined shall have the definitions provided in the Uniform Commercial Code.

**LATE CHARGE.** If any payments are not timely made (there being no grace period under this Note), Maker shall also pay to Holder a late charge equal to 5% of each payment past due.

Acceptance by Holder of any late payment without an accompanying late charge shall not be deemed a waiver of Holder's right to collect such late charge or to collect a late charge for any subsequent late payment received.

**ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Maker shall pay all of Holder's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses,

whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or Bankruptcy proceeding.

**DEFAULT.** If any of the following occurs, a default ("Default") under this Note shall exist: **Nonpayment; Nonperformance.** The failure of timely payment or performance of the Obligations or Default under this Note. **Cessation; Bankruptcy.** The death of, appointment of a receiver for, assignment for the benefit of creditors of, or commencement of any Bankruptcy or insolvency proceeding by or against Maker, or any party to this Note.

**REMEDIES UPON DEFAULT.** If a Default occurs under this Note, Holder may at any time thereafter, take the following actions: **Holder Lien.** Foreclose its security interest or lien on Maker's property without notice. **Acceleration Upon Default.** Accelerate the maturity of this Note and, at Holder's option, any or all other Obligations, whereupon this Note and the accelerated Obligations shall be immediately due and payable. **Cumulative.** Exercise any rights and remedies as provided under the Note, or as provided by law or equity.

**CONFESSION OF JUDGMENT.** Maker hereby constitutes and appoints Holder or any attorney designated by Holder (any of the foregoing may act), as the true and lawful attorneys-in-fact for him, in his name, place and stead, and upon the occurrence of a Default in the payment of the Obligations due under this Note, at maturity, or upon acceleration, to confess judgment against Maker, in favor of Holder, before any court as Holder may determine in his sole and absolute discretion, for all amounts owed with respect to the Obligations under and pursuant to this Note including, without limitation, all costs of collection and attorneys' fees, and court costs, hereby ratifying and confirming the acts of said attorney-in-fact as if done by Maker himself.

**WAIVERS AND AMENDMENTS.** No waivers, amendments or modifications of this Note shall be valid unless in writing and signed by Holder. No waiver by Holder of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Holder in exercising any right, power, or remedy under this Note shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Maker hereby waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind. Further, Maker agrees that Holder may extend, modify or renew this Note or make a novation of the loan evidenced by this Note for any period, and grant any releases, compromises or indulgences with respect to any collateral securing this Note, all without notice to or consent of Maker without affecting the liability of Maker under this Note.

**MISCELLANEOUS PROVISIONS. Assignment.** This Note shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Holder's interests in and rights under this Note are freely assignable, in whole or in part, by Holder. Maker may not assign his rights and interest hereunder without the prior written consent of Holder. Any attempt by Maker to assign without Holder's prior written consent is null and void. Any assignment shall not release any Maker from the Obligations. **Applicable Law; Conflict Between Documents.** This Note shall be governed by and construed under the laws of

the laws of the District of Columbia without regard to that state's conflict of laws principles. **Jurisdiction.** Maker irrevocably agrees to non-exclusive personal jurisdiction in the District of Columbia and Virginia for all purposes, including discovery in aid of enforcement of this Note and the Judgment. **Severability.** If any provision of this Note shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note or other such document. **Notices.** Any notices to Maker shall be sufficiently given, if in writing and mailed or delivered to the Maker's address shown above or such other address as provided hereunder, and to Holder, if in writing and mailed or delivered to Holder's office address shown above or such other address as Holder may specify in writing from time to time. In the event that Maker changes his address at any time prior to the date the Obligations are paid in full, Maker agrees to promptly give written notice of said change of address by pre-paid courier or delivery service (*e.g.*, Federal Express or DHL).

**SECURITY.** Maker hereby grants Holder a lien on all property of whatever type and wherever located owned that is directly or indirectly by Maker, in order to secure Maker's obligations to Holder. Maker hereby authorizes Holder to take all necessary actions to record, perfect and enforce the lien granted hereunder by Maker to Holder.

**BANKRUPTCY.** Maker agrees that his obligations under this Note shall not be dischargeable in bankruptcy, and hereby waives any and all rights to claim that the Obligations under this Note are dischargeable in bankruptcy.

**PLACE OF DELIVERY.** Maker hereby certifies that this Note was delivered to Holder in the District of Columbia. Delivery to Maker by facsimile or email shall constitute delivery of this Note.

**MAKER:**

_____
Tomas O. Kollen

**HOLDER:**

_____
Charles H. Camp

Page 4

**EXHIBIT 5**

**Charles Camp**

| | |
|---|---|
| **From:** | Charles Camp [ccamp@charlescamplaw.com] |
| **Sent:** | Monday, January 02, 2006 11:12 AM |
| **To:** | 'Tomas O. Kollen' |
| **Subject:** | Confirmation of Conversation This Morning re Payment |

Tomas:

Thank you for calling me this morning. This email confirms our conversation.

You will electronically transfer $12,000 to me today or tomorrow, and another $20,000 (in two installments) later this week, but in no event later than Monday of next week.

You agreed to provide me written confirmation of your initiation today of the electronic transfer of the $12,000 to me today.

You agreed to provide me with a copy today of documents showing that you will be receiving a loan, and that funds have been sent to you from Siemens, that will enable you to pay me the additional $20,000 later this week. Please make sure that the documents you send me disclose the full amount being loaned to you, and the full amount being sent to you by Siemens. Needless to add, should the documents you are sending me indicate that you will be receiving funds adequate to pay me the full $35,000 that was due on December 31, 2005, you will need to do that in order to prevent me from withdrawing this week.

You acknowledged that that discounted payment option is no longer available to you, and that you will be paying me the $100,000 plus interest due under the note you signed.

You acknowledged you have defaulted on the note and are required to pay the penalties provided for in the note because of your default.

Please let me know right away if I have misunderstood anything in our discussion this morning.

I will confirm receipt of the documents and each of the payments you have indicated you will be sending me.

Sincerely,

Charles

Charles H. Camp, Esquire
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, NW, Suite 300
Washington, DC 20006
Tel 202.349.3905
Fax 202.349.3906
Cell 301.461.0283
www.charlescamplaw.com

**EXHIBIT 6**

**Charles Camp**

| | |
|---|---|
| **From:** | Charles Camp [ccamp@charlescamplaw.com] |
| **Sent:** | Tuesday, January 03, 2006 11:26 AM |
| **To:** | 'Tomas O. Kollen' |
| **Subject:** | Payments Received on behalf of WIN-I/Confirmation of Receipt of $12,000 |
| **Attachments:** | 2056_001.pdf |

Tomas:

This morning, I received into my account the $12,000 you sent to me yesterday. Thank you.

Could you please send to me a copy of your bill(s) to Siemens indicating the total amount you are expecting to receive this week or next from Siemens?

The sooner you can provide me with the $11,000 being sent by your brother (can't he send it earlier than Friday?), and the Siemens funds, that would be **much** appreciated. Your delays in paying have cost me both credibility and thousands in interest and penalties. Please help me minimize any further costs resulting from you late payments.

As you requested, attached is information indicating the amounts you paid to me during 2005 (and 2004).

Sincerely,

Charles

Charles H. Camp, Esquire
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, NW, Suite 300
Washington, DC 20006
Tel  202.349.3905
Fax  202.349.3906
Cell  301.461.0283
www.charlescamplaw.com

---

**From:** Law Offices of C.H. Camp [mailto:ccamp@charlescamplaw.com]
**Sent:** Tuesday, January 03, 2006 11:18 AM
**To:** Charles Camp
**Subject:** PDF Document From Charles Camp Law

**EXHIBIT 7**

## Charles Camp

| | |
|---|---|
| **From:** | Charles Camp [ccamp@charlescamplaw.com] |
| **Sent:** | Monday, January 09, 2006 4:03 PM |
| **To:** | 'Tomas O. Kollen' |
| **Cc:** | 'Tomas O. Kollen' |
| **Subject:** | Acceleration of Confession of Judgment Promissory Note |

Dear Tomas:

I have tried to reach you several times today, both by telephone and in person, and was unable to do so. It appears to me that you are avoiding me. If I am wrong, please contact me immediately.

As you know, you repeatedly have told me you would transfer the remaining $23,000 portion of the $35,000 payment that was due on December 31, 2005, by today. I am very disappointed that you have not yet done so.

Your actions force me to immediately accelerate the Confession of Judgment Promissory Note, which you previously have acknowledged defaulting upon by failing to make the required $35,000 minimum payment due on or before December 31, 2005.

Consequently, as of today, you owe me $88,000 in principal, plus a 5% late fee on the $35,000 payment not timely paid on or before December 31, 2005 (*i.e.*, $1,750.00), plus 24% interest commencing as of October 1, 2005.

Please contact me as soon as possible.

Sincerely,

Charles Camp

Charles H. Camp, Esquire
LAW OFFICES OF CHARLES H. CAMP
1725 Eye Street, NW, Suite 300
Washington, DC 20006
Tel 202.349.3905
Fax 202.349.3906
Cell 301.461.0283
www.charlescamplaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Opposition and all exhibits thereto were served

via hand delivery this 17th day of May 2006 upon Defendant Kollen's counsel of record as follows:

John M. Clifford, Esquire
Clifford & Garde
1707 L Street, N.W., Suite 500
Washington, D.C.  20036

Charles H. Camp